## CIRCUIT COURT OF SMYTH COUNTY

Bottomley

v.

Shores

### April 1, 1992

### Case No. (Law) 91–3489

BY JUDGE CHARLES H. SMITH, JR.

This matter is before the court for decision with regard to the demurrer filed by the defendants, Mr. and Mrs. Shores. I have reviewed the file, which consists of the pleadings and memoranda of counsel, and considered the same in light of arguments made and authorities cited.

The infant plaintiff filed this suit on August 22, 1991, seeking compensatory and punitive damages from the defendants for injuries sustained by the plaintiff as a result of being doused by gasoline and set on fire by the infant defendant while visiting in the Shores home. The plaintiff suffered excruciating pain and severe and permanent injuries and disfigurement.

The defendants, Mr. and Mrs. Shores, have demurred alleging the facts pleaded do not state a cause of action for which recovery is recognized in the Commonwealth. They cite the recent case of *Bell v. Hudgins*, 232 Va. 491 (1987), in support.

The plaintiff, while conceding that Virginia follows the common law rule that parents are not vicariously liable for the tort of a minor child, nevertheless contend that their action against the Shores is based upon well-pleaded allegations of the parents' own independent, actionable negligence. Indeed, their motion for judgment is careful to separate the counts and to delineate just how they contend the Shores were negligent and how such negligence proximately caused the plaintiff's injuries. The plaintiff described at least six separate occasions in which the infant defendant has used fire or hot

objects to set fire to or burn himself or other children. Consequently, he alleges the Shores were aware of this dangerous propensity of their son, and knowing the plaintiff was a regular visitor in their house and would be playing with their son in an area where gasoline was stored, were negligent in failing to keep their premises in a safe condition for his visit — to wit, securely storing the gasoline — and in failing to warn the plaintiff of the peril.

The plaintiff places reliance in language taken from the Georgia case of *Jacobs v. Tyson*, 200 Ga. 123 (1991). In that case, a twelve-year-old boy was killed in the home of another twelve-year-old boy while the two were in the home alone and playing with a loaded pistol which had been retrieved from the parents' bedroom. The Georgia court, while recognizing that settled Georgia law did not impose liability upon parents for the torts of their minor children merely because of the parent-child relationship; nevertheless, stated an exception in this case as follows:

> In cases of this sort, the question is whether the facts of a case impose upon the parent a duty to anticipate injury to another through the child's use of the instrumentality. Recovery has been permitted where there was some parental negligence in furnishing or permitting a child access to an instrumentality with which the child likely would injure a third party . . . .
>
> In those cases in which the parent did not furnish the dangerous instrumentality but through negligence allowed access thereto to the child, the standard for imposing liability upon a parent is whether the parent knew of the child's proclivity or propensity for the specific dangerous activity.

The Georgia court went on to hold that a jury issue was presented as to whether the parents were negligent in keeping the loaded pistol in their home in a location where it was accessible to their twelve-year-old son while he was present there with another child without adult supervision.

In the case of *Bell v. Hudgins* relied upon by the defendants, the plaintiff sued the infant's parents for damages on account of personal injuries she sustained as the result of an attempted rape at knifepoint by the defendant's son at her place of employment. There was evidence in that case of the son's propensity for violence and of the parent's knowledge of his violent outbursts. The plaintiff there al-

leged that this required the parents to seek custodial or institutional care for their son. The Virginia Supreme Court upheld the trial court in sustaining the defendant's demurrer to the pleadings. In doing so, the court stated:

> The plaintiff invites us to adopt the Restatement position. That rule provides:
>
> "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." (Restatement Second of Torts, § 316).
>
> We decline the plaintiff's invitation.
>
> We are unwilling to establish in Virginia by judicial decree a blanket rule which would impose civil liability upon parents who fail to control their minor child's criminal behavior . . . .
>
> We believe that a decision whether to adopt a doctrine of parental neglect is more properly left to the legislature because of the many societal and policy considerations which necessarily bear upon such a decision.

Thus, the holding in the *Bell* case is that parents in Virginia are not vicariously responsible for the willful malicious intentional criminal behavior of a child. I believe, however, that the ruling must be confined to the particular facts and circumstances of that case. The facts in that case are clearly distinguishable from the factual allegations upon which liability is predicated in the case at bar. In the *Bell* case, it was the child's conduct that was sought to be controlled; it was not the knife he wielded in the attempted rape. The *Bell* case sought to establish parental responsibility for the child's independent criminal behavior. The *Bell* case sought to establish a policy of liability for parental neglect for parents who fail to control or institutionalize children whom they know to have a propensity for violence. Obviously, such a theory is wrought with societal and public policy considerations more properly left to the legislature.

The allegations in the motion for judgment in the case at bar seek to impose liability upon the defendant parents in failing to keep the

gasoline securely stored away from their son; thus failing to render their premises safe for the visits of the infant plaintiff. Such a theory of liability would not implicate the societal and public policy considerations inherent in the *Bell* case.

I believe that a jury issue exists in this case as to whether the defendant parents were negligent in storing the gasoline in their house in a location where it was easily accessible to their son who had a known proclivity for using the same to cause harm to others. Consequently, I will overrule the demurrer.